Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorneys for Plaintiff and the putative class*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEVEN KERN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**FORWARD SUNSET, INC.,** a California registered corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

This case addresses a disturbing trend whereby realtors cold call consumers without consent violating the Telephone Consumer Protection Act. Plaintiff Steven Kern ("Plaintiff Kern" or "Kern") brings this Class Action Complaint and Demand for Jury Trial against Defendant Forward Sunset, Inc. d/b/a Keller Williams Hollywood Hills ("Defendant" or "KW Hollywood Hills") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending

telemarketing text messages to consumers without consent including sending multiple text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). As a result, Plaintiff seeks to obtain injunctive and monetary relief for all persons injured by Defendant's telemarketing practice. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.    Plaintiff Steven Kern is a resident of Los Angeles, California.

2.    Defendant KW Hollywood Hills is a corporation registered in California with its headquarters located in West Hollywood, California. Defendant KW Hollywood Hills conducts business throughout this District.

## JURISDICTION AND VENUE

3.    This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. § 227.

4.    This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant's wrongful conduct of calling the Plaintiff was directed to and received by Plaintiff in this District on Plaintiff's California area code cell phone number.

## INTRODUCTION

5.    As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.    By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.    According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in December 203 alone, at a rate of 121.6 million per day. www.robocallindex.com (last visited January 14, 2024).

10.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and

232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

## KW HOLLYWOOD HILLS PROMOTES KELLER WILLIAMS BOLD TO ITS AGENTS

13.     Forward Sunset, Inc. operates using the d/b/a Keller Williams Hollywood Hills.[3]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www2.dre.ca.gov/publicasp/pplinfo.asp?License_id=01385866

CLASS ACTION COMPLAINT
-4-

14.     Defendant KW Hollywood Hills is a real estate brokerage that assists consumers in buying and selling properties through its agents and shares in the commission for its services.[4]

15.     Defendant KW Hollywood Hills trains its real estate agents through common training programs it provides to its agents.

16.     Defendant KW Hollywood Hills promotes its agents to take BOLD, a Keller Williams training program, even advertising that the first class is free:



17.     In fact, KW Hollywood Hills broker Renee Pietrangelo promotes BOLD directly on her Facebook page, seemingly indicating that she herself was involved in the BOLD training classes:

---

[4] https://www.linkedin.com/company/kellerwilliamshollywoodhills/about/
[5] https://www.facebook.com/profile/100063439255396/search/?q=bold



18.    The Keller Williams' BOLD ("BOLD") program provided by Defendant KW Hollywood Hills to its agents, provides instruction and training on who to call, how to call them, and what to say.

19.    More specifically, KW BOLD instructs agents to cold call consumers who have never given the agent consent to call them such as consumers with expired listings (who have no relationship with the Defendant) or for-sale-by-owner

---

[6] https://www.facebook.com/profile/100063550810373

consumers who have not invited solicitation calls from Keller Williams agents to solicit them to list their property with them.

20.    KW BOLD is a seven week training program that "conditions real estate agents with powerful mindset exercises, language techniques, business-building strategies and **live real estate lead generation activities.**"[7]

21.    KW Bold trains agents to cold call consumers with expired listings[8] and FSBOs to solicit them to list with them.

22.    The BOLD program coyly refers to FSBOs which normally refers to "For Sale by Owner" as "Fastest Source of Business Opportunity"[9] and directs their agents to cold call those phone numbers as a valued lead source for new business.

23.    Phone calls that are placed to FSBO consumers and consumers with expired listings are cold calls, as the consumers never provided consent to receive solicitation calls from Defendant's agents who are calling to offer their services.

24.    Keller William's BOLD's course provided by Defendant entails step-by-step training on cold calling expireds and FSBOs, including training them on scripts to use during the calls.

---

[7] https://moving-careers.com/fsbos-expired-listings-kw-bold-revolution-career-in-real-estate-at-keller-williams/

[8] "In Step 4 of KW Bold Revolution, participants continue real estate lead generation success by calling expired listings and tackle their personal breakdowns with a stirring experience in gratitude. Through powerful exercises, they realize the influence of a positive mindset and self-image, and face their fears in preparation for making calls." https://moving-careers.com/fsbos-expired-listings-kw-bold-revolution-career-in-real-estate-at-keller-williams/

[9] https://www.youtube.com/watch?v=vUOiFvOFuvI

**DURING BOLD YOU WILL:**
- Overcome your limiting beliefs
- Set BOLD goals
- Learn how to deliver powerful scripts that naturally influence people to work with you
- Incorporate time-saving strategies and techniques that will take your business to the highest levels
- Build an abundance of leads into your business
- Make calls, set appointments and close contracts

*Please direct your questions about this event to us at BOLD@kw.com.* [10]

## KW HOLLYWOOD HILLS ENDORES THEIR AGENTS' COLD CALLING

25.    KW Hollywood Hills endorses its most successful teams and agents who use cold calling to generate their business.

26.    For instance, Ikon Advisors (a KW Hollywood Hills team) which is led by Yohann Bensimon, was recognized by Defendant as one of their top agents in December of 2023:

---

[10] Id.




**Keller Williams Hollywood Hills** is with **Woodruff Realty Group** and **2 others**.

January 8 at 3:37 PM · 🌐

Meet our Top 10 Agents who finished off the year on a strong note in December 2023!

A cheers to their continued success and dedication to being top performing agents. 🥂

[11]

27.     Bensimon and Ikon Advisors have been recognized numerous times by KW Hollywood Hills through social media as one of its top agents. For example:

---

[11] https://www.facebook.com/KWHH354



[12]

28.     Ikon Advisors openly admits through its job postings that it expects its agents to make cold calls based on a business plan that is tailored to each agent:

IKON ADVISORS
A REAL ESTATE GROUP    HOME    ABOUT US    BUY    SELL    LEASE    INVESTORS    SALES    CONTACT    CAREERS

**What we expect of you.**

Our team is growing and is currently in search of real estate sales associates. We are looking for individuals with a hunger to learn the ins and outs of investment real estate—driven, reliable, hard-working self-starters open to gaining new knowledge. We are looking for people who don't make excuses and strive to become better versions of themselves every day.

No prior real estate experience necessary. We have the resources to teach those willing to learn—all we're missing is you.

- Have Full-Time Availability - Entails being at our office on weekdays from 9am-6pm unless out for meetings, inspections, etc.
- Make Cold Calls - Meet the minimum required number of calls per week determined by a business plan tailored to you
- Win Appointments - Schedule and attend meetings with prospects; convert calls into appointments and appointments into listings and sales
- Seek Industry Knowledge - Take the initiative to stay up to date with the state of the market
- Learn to Underwrite - The ability to evaluate subject properties; experience not required

Preferred Qualifications:
Basic computer proficiency including...
- Microsoft Office Suite: Excel, Word, PowerPoint
- Google G-Suite: Drive, Calendar, Sheets, G-Mail

[13]

---

[12] https://www.instagram.com/p/Cv0NCwgPJLu/?hl=en
[13] https://www.ikonadvisors.com/careers

29.    In addition to the above, KW Hollywood Hills real estate agents openly admit that they generate listings through cold calling consumers.

30.    For example, the KW Hollywood Hills real estate agent Deion Reynolds that sent unsolicited text messages to Plaintiff Kern openly admits he cold calls and encourages other agents to do the same, as per his post on Instagram:



31.    In the above video clip that discusses 3 quick tips for succeeding in real estate, Deion Reynolds states, "Lastly, you're going to cut out a chunk of your day, every day to lead gen. ***This is going to be where you cold call, door knock…"***[15] (emphasis added).

32.    Defendant KW Hollywood Hills even gives classes titled "Cold Calling. "

---

[14] https://www.instagram.com/p/CVA0H_OFh_G/?hl=en
[15] Id.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



16

33.    Defendant promoted another "Cold Calling" training program.



[17]

34.    In response to these unsolicited text messages, Plaintiff Kern brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class, and costs.

---

[17] https://www.facebook.com/events/keller-williams-hollywood-hills/cold-calling-w-yonah-kosman/499061160846083/

## PLAINTIFF KERN'S ALLEGATIONS

35.    Plaintiff Kern is the sole user of his cell phone number ending in 4002.

36.    Plaintiff Kern uses his cell phone number for personal use only as one would use a telephone line in a home. It is not associated with a business.

37.    Plaintiff Kern registered his cell phone on the DNC on July 27, 2003 to avoid unsolicited calls and text messages.

38.    On December 25, 2023 at 9:44 AM, Plaintiff Kern received an unsolicited text message as seen below to his cell phone from Defendant's agent Deion Reynolds, from the phone number 310-318-3444:



39.    The content of the text message stated "Hello, My name is Deion Reynolds, a top performing agent at Keller Williams, one of the top Brokerages in the country. I don't come to sell you on anything, just here to offer my expertise to help. I have experience as Agent and Mortgage Broker, as well as having my CPA

license with experience in Real Estate tax. Could you use some information on what's going on around you in the market? Deion Reynolds 310-318-3444."

40.    On December 25, 2023 at 11:43 AM, Plaintiff Kern received a 2nd unsolicited text message to his cell phone from the Defendant's agent Deion Reynolds, also from the phone number 310-318-3444 with the exact same text message:



41.    Although Reynolds claims in the text messages that he wasn't trying to sell anything, he then goes on to offer his expertise to help based on his experience as a real estate agent and mortgage broker, offering information about the real estate market.

42.    In fact, the text messages that Plaintiff received from Reynolds, on behalf of KW Hollywood Hills were solicitations about offering real estate services.

43.    Plaintiff never consented to receiving solicitation calls or text messages from Defendant or its agents.

44.    In fact, Plaintiff Kern has never provided his cell phone number to any Keller Williams real estate agent.

45.    Plaintiff was not looking to sell his home and was not looking to purchase any new properties.

46.    The unauthorized text messages made by Defendant, as alleged herein, have harmed Plaintiff Kern in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

47.    Seeking redress for these injuries, Plaintiff Kern, on behalf of himself and a Class of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

**48.**    Plaintiff Kern brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

**<u>Do Not Call Registry Class:</u>** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant texted on more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.

49.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly

execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Kern anticipates the need to amend the Class definitions following appropriate discovery.

50.    **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

51.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Kern and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)    whether Defendant's conduct constitutes a violation of the TCPA;

(b)    Whether Defendant sent multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text;

(c)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

52.    **Adequate Representation**: Plaintiff Kern will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent

and experienced in class actions. Plaintiff Kern has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Kern and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Kern nor his counsel have any interests adverse to the Class.

53.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

# FIRST CLAIM FOR RELIEF
## Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Kern and the Do Not Call Registry Class)

54.     Plaintiff Kern repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

55.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

56.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

57.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Kern and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who

do not wish to receive telephone solicitations that is maintained by the federal government.

58.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Kern and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

59.    As a result of Defendant's conduct as alleged herein, Plaintiff Kern and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

60.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kern, individually and on behalf of the Class, prays for the following relief:

a.  An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Kern as the representative of the Class; and appointing his attorneys as Class Counsel;

b.  An award of actual and/or statutory damages and costs;

c.  An order declaring that Defendant's actions, as set out above, violate the TCPA;

d.  An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e.  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Kern requests a jury trial.

Respectfully Submitted,

**STEVEN KERN**, individually and on behalf of those similarly situated individuals

Dated: February 14, 2024

By: /s/ *Rachel E. Kaufman*
Rachel Elizabeth Kaufman
Kaufman P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
(305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*